**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAY PADILLA, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 12-cv-7350 |
| DISH NETWORK L.L.C. | ) ) | Judge Robert M. Dow, Jr. |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motion to dismiss [25] is granted in part. This case is set for status on August 14, 2013, at 9:00 a.m.

**I.    Background[1]**

Defendant, a provider of home satellite television service, requires customers to provide "personally identifiable information" as a condition of service. Personally identifiable information includes a customer's social security number, address, phone number, and credit and debit card information. Defendant's Privacy Policy, as quoted in Plaintiff's complaint, explains how Defendant purports to handle its customers' personal information:

> DISH maintains personally identifiable information about you in our regular business records while you are a subscriber to our satellite television service or other services. We also maintain this information for a period of time after you are no longer a subscriber if the information is necessary for the purposes for which it was collected or to satisfy legal requirements. These purposes typically include business, legal, or tax purposes. If there are no pending requests, orders,

---
[1] The factual background is drawn from Plaintiff's complaint. In ruling on Defendant's motion to dismiss, the Court assumes all well-pled allegations in Plaintiff's complaint to be true. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

> or court orders for access to this personally identifiable information, we will destroy the information after it is no longer necessary for the purposes for which it was collected.

Plaintiff alleges that although the Privacy Policy states that Defendant will retain a former customer's personally identifiable information only as long as it "is necessary for the purposes for which it is collected or to satisfy legal requirements," "in practice, DISH simply retains customers' [personally identifiable information] indefinitely." Compl. ¶ 22.

Plaintiff is a resident of Illinois who signed up for Defendant's satellite services in 2004. As a condition of service, Defendant required Plaintiff to provide various forms of personally identifiable information. ¶ 35. On or about March 1, 2011, Plaintiff cancelled his service with Defendant, but Defendant has not yet destroyed its records of his personally identifiable information. ¶¶ 22, 36, 37. Since cancelling his service, Plaintiff has not received notice from Defendant informing him that Defendant still has his personally identifiable information and how it is being used, if at all. ¶ 38.

Plaintiff alleges that Defendant's retention of his personally identifiable information and failure to send annual notices about his personally identifiable information after he cancelled his DISH services violates the Satellite Home Viewer Extension and Reauthorization Act ("SHVERA"), 47 U.S.C. § 338i(1) and (6) and state law. Defendant has moved to dismiss under Rules 12(b)(1) and 12(b)(6).

## II. Legal Standard

Under Rule 12(b)(1), a party may present a facial or factual challenge to the Court's subject-matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Company*, 572 F.3d 440, 443 (7th Cir. 2009). In a facial challenge, the defendant contends that even if the Court assumes the

truth of the well-pled allegations in the complaint, the plaintiff has nevertheless failed to allege a basis for subject-matter jurisdiction. *Id.*; *United Phosphorous, LTD. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012). In a factual challenge, by contrast, the defendant allows that the complaint may *allege* a sufficient basis for subject-matter jurisdiction, but maintains that there is no jurisdiction *in fact*. *Apex Digital*, 572 F.3d at 444. When a defendant makes a factual challenge to the Court's subject-matter jurisdiction, the Court may consider "whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (additional citations omitted)). The party invoking the Court's subject-matter jurisdiction has the burden of establishing it. *Muscarello v. Ogle Cnty. Bd. of Commr's,* 610 F.3d 416, 425 (7th Cir. 2010) (citations omitted); *United Phosphorous*, 322 F.3d at 946 ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all

of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

## III. Analysis

Plaintiff's complaint alleges two federal and two state-law claims. In Count I, Plaintiff alleges that Defendant's *retention* of his personally identifiable information after he cancelled his DISH subscription violates SHVERA § 338i(6). Plaintiff alleges in Count II that Defendant's failure to send him *notice* about his personally identifiable information after he cancelled his DISH subscription violates SHVERA § 338i(1). In Count III, Plaintiff alleges that Defendant's conduct violates the Illinois Cable and Video Consumer Protection Law, 220 ILCS § 5/22-501. Finally, Count IV asserts that Defendant's conduct breached an implied contract with Plaintiff. Defendant has moved to dismiss on jurisdictional and procedural grounds, and the Court will consider Defendant's objections to each claim separately. See *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate standing for each claim he seeks to press"); *Rifkin v. Bear Stearns & Co., Inc.*, 248 F.3d 628, 634 (7th Cir. 2001) (same); see also

4

*Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 186 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought"); *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir. 2010) (same).

### A. Count I – Retention of Personally Identifiable Information

In Count I, Plaintiff alleges that Defendant's retention of his personally identifiable information after he cancelled his DISH subscription violates SHVERA § 338i(6), which provides that

> A satellite carrier shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under paragraph (5) [access by subscriber] or pursuant to a court order.

Plaintiff believes that Defendant's retention of his personally identifiable information entitles him to damages, an injunction, and fees under § 338i(7), which provides that

> Any person aggrieved by any act of a satellite carrier in violation of this section may bring a civil action in a United States district court. The court may award —
>
> **(A)** actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
>
> **(B)** punitive damages; and
>
> **(C)** reasonable attorneys' fees and other litigation costs reasonably incurred.
>
> The remedy provided by this subsection shall be in addition to any other lawful remedy available to a satellite subscriber.

In its jurisdictional argument under Rule 12(b)(1), Defendant maintains that even assuming the truth of Plaintiff's allegations, his claim that Defendant retained his personally identifiable information after he cancelled his subscription does not satisfy Article III's injury-in-fact requirement. See *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (Article III standing requires

(1) an injury-in-fact, "a concrete and particularized injury that is either actual or imminent"; (2) that the injury is "fairly traceable to the action of the defendant"; and (3) "that it is likely that a favorable decision will redress that injury."); *Milwaukee Police Ass'n v. Board of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013). In its argument under Rule 12(b)(6), Defendant takes a different perspective on the same point: Plaintiff must allege more than retention to state a claim under SHVERA, § 338i(6).

Where a defendant's jurisdictional arguments are distinct from its arguments for dismissal for failure to state a claim, the Court will address the jurisdictional arguments first. See *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n. 1 (7th Cir. 2013).[2] Here, however, Defendant makes the same arguments under Rules 12(b)(1) and 12(b)(6) and does not ask the Court to consider facts outside Plaintiff's complaint. Thus the Rule 12(b)(1) and Rule 12(b)(6) arguments present the Court with the same question — whether Plaintiff has alleged an injury-in-fact by stating a claim under SHVERA — and so the Court cannot avoid treating them together. See *Peckman v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *Beam v. Mukaskey*, 2008 WL 4614324, at *6 (N.D. Ill. Oct. 15, 2008) (addressing Rule 12(b)(1) and (6) motions together where the jurisdictional "injury-in-fact inquiry * * * blends into an inquiry into the merits of Plaintiffs' allegations, as the Plaintiffs have alleged [an injury-in-fact] only if they have alleged a violation of [a federal statute].").

---

[2] In *Yassan* the Seventh Circuit explained that it is "improper for courts to skip over jurisdictional issues in order to reach the merits, even when 'the merits question is more easily resolved,'" 708 F.3d at 967 n. 1 (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93 (1998)) and applied this rule to mean that the district court erred, albeit harmlessly, by addressing the defendant's Rule 12(b)(6) motion before its Rule 12(b)(1) motion.

Although the Court is unaware of appellate decisions addressing claims like Plaintiff's under SHVERA, the Court has the benefit of the Seventh Circuit's discussion in *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012), which considered whether a plaintiff could state a similar claim for damages — a claim for damages based on the retention of personal information "lawfully obtained and not disclosed" — under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, a statute with an information-destruction provision nearly identical to SHVERA § 338i(6). *Sterk* concluded that the allegation of unlawful retention did not state a claim for damages for two reasons: (1) the structure of the VPPA and (2) the absence of actual damages from the defendant's retention of the plaintiff's personal information without disclosure. The second point is what matters for this case, but it is important to review both to avoid distorting *Sterk*'s holding.

So, first, *Sterk*'s point about the structure of the VPPA: Subsection (b) of the VPPA states that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer * * * shall be liable to the aggrieved person for the relief provided in subsection (c)." 18 U.S.C. § 2710(b), as corrected by *Sterk*, 672 F.3d at 538. Subsection (c) allows "[a]ny person aggrieved" to bring a civil action in federal court, and permitted the court to award "actual damages but not less than liquidated damages in an amount of $2,500." Subsection (e), much like SHVERA § 338i(6), provides for the destruction of old records containing personally identifiable information "as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected." The question for the Seventh Circuit was whether the plaintiff could state a claim for damages pursuant to subsection (c) for a violation of (e). *Sterk*, following a Sixth Circuit case, held that the placement of (e) after (c) was likely not an accident and that (c) is limited to

7

enforcing (b), the prohibition on disclosure. This interpretation was reinforced by the reference to (c) in subsection (b). 672 F.3d at 538.

SHVERA has a less perplexing structure — the penalty provision follows the information-destruction provision — and so the first reason for *Sterk*'s holding is irrelevant to this case. But the second reason supporting *Sterk*'s holding that the plaintiff could not state a claim for damages by alleging nothing more than the defendant's unlawful retention of his personal information is that *retention alone causes no actual damages*. That conclusion applies to SHVERA and the VPPA with equal force:

> How could there be injury [from retention of personal information], unless the information, not having been destroyed, were disclosed? If, though not timely destroyed, it remained secreted in the video service provider's files until it was destroyed, there would be no injury. True, subsection (c)(2)(A) allows $2,500 in "liquidated damages," without need to prove "actual damages," but liquidated damages are intended to be an estimate of actual damages, *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 593 (7th Cir. 1994), and if failure of timely destruction results in no injury at all because there is never any disclosure, the only possible estimate of actual damages for violating [the requirement that records timely be destroyed] would be zero.

*Id.* at 538. As additional support, the court cited *Doe v. Chao*, 540 U.S. 614, 624 (2004). In that case, the Supreme Court held that although the Privacy Act provided for "actual damages sustained by the individual as a result of the refusal or failure [of a federal agency to comply with the Privacy Act], but in no case shall a person entitled to recovery receive less than $1,000," 5 U.S.C. § 552a(g)(4)(A), a plaintiff could not recover statutory damages without proof of an actual injury. 540 U.S. at 624; *Sterk*, 672 F.3d at 538.

The parties dispute whether the court relied on the second reason, and so *Doe v. Chao*, for its holding or whether that part of the opinion was dicta. That matters little here, for the point is persuasive either way. The Court does not see how Plaintiff could have actual damages based solely on Defendant's retention of his personally identifiable information. Plaintiff's complaint

8

and response to Defendant's motion to dismiss go on at length about the value of personally identifiable information, but so long as that information remains safely tucked away on Defendant's servers, its value is undiminished and "the only possible estimate of actual damages [for retention] would be zero." *Sterk*, 672 F.3d at 538.

Plaintiff emphasizes that the "injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which create standing," *Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) (citing See *Warth v. Seldin*, 422 U.S. 490, 498 (1975)), and that is true enough, but it does not advance his claim for damages, for the question here is just that: when does SHVERA provide a right to damages? SHVERA § 338i(7) provides that an "aggrieved" person may recover "actual damages but not less than liquidated damages" of at least $1,000. Based on the language of the statute, as well as *Sterk* and *Doe*, the Court is persuaded that Plaintiff is not "aggrieved" and so may not recover statutory damages without plausibly alleging actual damages. Accordingly, insofar as Plaintiff seeks to recover damages for Defendant's retention of his personally identifiable information, his claim is dismissed.

That, however, is not the end of the story for Count I, because Plaintiff is also seeking an injunction. On this point, *Sterk* is helpful to Plaintiff. *Sterk* did not say that the plaintiff's unlawful-retention claim did not allege any injury whatsoever, but only that such a plaintiff has not alleged actual damages. *Sterk* allowed that a plaintiff in that situation may have *some* injury, even if the "injury inflicted by such a failure [to destroy personal information as required by law] is enormously attenuated," and so may be entitled to equitable relief. 672 F.3d at 539. Thus Plaintiff has alleged an injury — the failure to comply with SHVERA § 338i(6) — and so has standing to seek an injunction, and has alleged all that is necessary to state that claim.

Specifically, Plaintiff has alleged that he is no longer a subscriber and that Defendant has kept and is keeping his personally identifiable information longer than is allowed by § 338i(6).

To state that claim, Plaintiff is not required to allege more than that. Going forward, of course, Plaintiff will have to prove that Defendant's continued retention of his personally identifiable information is "is no longer necessary for the purpose for which it was collected" or is not being held for some other lawful reason. Defendant argues that its retention of Plaintiff's information is consistent with its privacy policy, has not been long (only a year-and-a-half at the time of suit), and is necessary to satisfy a multitude of legal requirements. See [40 at 17 n. 9]. That may be true, but the Court cannot make that determination at the motion-to-dismiss stage.

The Court's conclusion that Plaintiff cannot state a claim for damages but has stated a claim for an injunction is bolstered by Judge Kennelly's ruling on the remand in *Sterk*. See *Sterk v. Redbox Automated Retail, LLC*, 2012 WL 3006674 (N.D. Ill. July 23, 2012). In dismissing a claim for damages based on unlawful retention different from the one presented to the Seventh Circuit on interlocutory appeal, Judge Kennelly explained that "it appears that the [Seventh Circuit] has determined as a matter of law that damages are not an appropriate remedy for any claim based on unlawful retention." *Id.* at *6. But despite the dismissal of the plaintiffs' claims for damages, the court allowed that the plaintiffs had stated a claim for an injunction based on the defendant's alleged unlawful retention of his personally identifiable information. *Id.* at *9 ("Plaintiffs still have an injury, even if only a highly attenuated one, if [the defendant] retained their personal information without authorization."). The Court finds Judge Kennelly's opinion persuasive. As in *Sterk*, Plaintiff cannot state a claim for damages based on alleged unlawful retention, but he does state a claim for an injunction. SHVERA sets bounds on how long a satellite provider may retain the personally identifiable information of former customers, and an

injured plaintiff may seek to enforce that provision in a federal suit. See *Sterk*, 672 F.3d at 539 ("absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." (quoting *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979)).

**B.     Count II – Notice About Personally Identifiable Information**

Plaintiff's second SHVERA claim is that Defendant has retained his personally identifiable information after he cancelled his service but without sending him a yearly notice as required by § 338i(1), which provides that

> At the time of entering into an agreement to provide any satellite service or other service to a subscriber and at least once a year thereafter, a satellite carrier shall provide notice in the form of a separate, written statement to such subscriber which clearly and conspicuously informs the subscriber of—
>
> **(A)** the nature of personally identifiable information collected or to be collected with respect to the subscriber and the nature of the use of such information;
>
> **(B)** the nature, frequency, and purpose of any disclosure which may be made of such information, including an identification of the types of persons to whom the disclosure may be made;
>
> **(C)** the period during which such information will be maintained by the satellite carrier;
>
> **(D)** the times and place at which the subscriber may have access to such information in accordance with paragraph (5); and
>
> **(E)** the limitations provided by this section with respect to the collection and disclosure of information by a satellite carrier and the right of the subscriber under paragraphs (7) and (9) to enforce such limitations. [* * *]

SHVERA incorporates the definition of 'subscriber' from 17 U.S.C. § 122. See 47 U.S.C. § 338k(9):

> The term "subscriber" means a person or entity that receives a secondary transmission service from a satellite carrier and pays a fee for the service, directly or indirectly, to the satellite carrier or to a distributor.

17 U.S.C. § 122j(6). Defendant argues that Plaintiff's notice claim should be dismissed for the simple reason that the notice provision consistently refers to subscribers in the present tense, and therefore applies only to current subscribers, and not to a former subscriber like Plaintiff. Defendant believes that this reading provides the only reasonable result because otherwise satellite providers would have to obtain and retain contact information for former subscribers.

Plaintiff responds that restricting the notice requirement to current subscribers would allow satellite operators to violate the rights of former subscribers with impunity. In Plaintiff's words, "it would allow satellite operators to indefinitely retain their former subscribers' information, and disclose the information to anyone they please, without consequence." [35 at 17]. The disaster that Plaintiff imagines could not be the result of reading the term 'subscriber' in the notice provision to refer only to current subscribers. Presumably his concern is that reading the term to refer only to current subscribers in the notice provision would prevent former subscribers from suing under the unlawful disclosure provision, 47 U.S.C. § 338i(4)(A), which is not at issue in this case, but also refers to subscribers in the present tense.

Statutory construction begins with the language of the statute and context in which the language in question was used. See, *e.g.*, *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1078 (7th Cir. 2013). If the language is unambiguous, it will be enforced "according to its terms." *Id.* There is nothing ambiguous about the term "subscriber," and the Court agrees with Defendant that it makes sense that Congress would want to limit a satellite carrier's obligations under § 338i(1) to current subscribers. The snag is the presumption that "identical words used in different parts of the same act are intended to have the same meaning." *Firstar Bank, N.A. v.*

*Faul*, 253 F.3d 982, 990 (7th Cir. 2001) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (additional citations omitted). That, however, is only a presumption, and it can be rebutted where it would produce an absurd result, as here. Reading 'subscribers' in the notice provision to include former subscribers would require satellite providers to collect and retain additional information about former subscribers, turning a law intended to limit the retention of personally identifiable information into a de-facto requirement that additional personal information be collected and retained. Moreover, keeping up with that obligation would be difficult, for broadcast services are often cancelled precisely when a former customer is moving. Thus, the Court gives the term 'subscriber' in § 338i(1) its plain meaning, and concludes that it applies to current subscribers. Because Plaintiff is not a current subscriber, he cannot state a claim under the notice provision.

### C. Count III – Illinois Cable and Video Consumer Protection Law

Plaintiff alleges that Defendant's conduct violates the Illinois Cable and Video Consumer Protection Law ("CPL"), 220 ILCS § 5/22-501, which, in relevant part, provides that

> Cable or video providers **shall not disclose** the name, address, telephone number or other personally identifying information of a cable service or video service customer to be used in mailing lists or to be used for other commercial purposes not reasonably related to the conduct of its business unless the cable or video provider has provided to the customer a notice, separately or included in any other customer service notice, that clearly and conspicuously describes the customer's ability to prohibit the disclosure. Cable or video providers shall provide an address and telephone number for a customer to use without a toll charge to prevent disclosure of the customer's name and address in mailing lists or for other commercial purposes not reasonably related to the conduct of its business to other businesses or affiliates of the cable or video provider. **Cable or video providers shall comply with the consumer privacy requirements of Section 26-4.5 of the Criminal Code of 2012, the Restricted Call Registry Act, and 47 U.S.C. 551** that are in effect as of June 30, 2007 (the effective date of Public Act 95-9) and as amended thereafter.

13

220 ILCS § 5/22-501(p) (emphasis added).  Defendant argues that Plaintiff's CPL claim must be dismissed because the CPL governs disclosure and not retention of personally identifiable information and does not require compliance with SHVERA.  In response, Plaintiff argues that CPL applies to Defendant's alleged conduct because the CPL (1) includes providers of "direct broadcast satellite" in its definition of "cable or video provider," (2) requires compliance with the Cable Act, 47 U.S.C. § 551, (3) the Cable Act has a destruction of records provision, § 551(e), and therefore (4) the Illinois CPL makes the Cable Act applicable to Defendant, a satellite carrier.

The problem with Plaintiff's argument is that the Cable Act does not apply to satellite providers, and the CPL's definition of cable or video providers does not change that.  See *Santellana v. Nucentrix Broadband Networks, Inc.*, 211 F. Supp. 2d 848, 854 (S.D. Tex. 2002) (satellite providers are not cable providers under the Cable Act).  If Plaintiff were alleging that Defendant *disclosed* personally identifiable information, then CPL § 5/22-501(p) together with CPL's broad definition of cable or video provider might provide a state-law cause of action.  But, as discussed, Plaintiff is not alleging disclosure.  And Plaintiff does not argue that CPL incorporates SHVERA or that the Cable Act applies to Defendant without borrowing a definition of cable or video provider from Illinois law.  Plaintiff's CPL claim is dismissed.

### D. Count IV – Implied Contract

In his complaint, Plaintiff alleges that the parties had an implied contract that arose when Plaintiff provided defendant with his personal information, and that Defendant breached the implied contract by retaining his information and failing to send notices.  Defendant moved to dismiss this claim, arguing that it did nothing inconsistent with its privacy policy (quoted in

14

Section I, above). In response to Defendant's motion to dismiss, Plaintiff voluntarily dismissed his implied contract claim, and asked for leave to amend his complaint to add a claim for "breach of express contract" based on Defendant's alleged failure to comply with its own privacy policy. Plaintiff's motion for leave to amend is denied. See, *e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (leave to amend may be denied when it is clear that amendment would be futile). As the Court has already discussed, Plaintiff has not plausibly alleged damages from Defendant's retention of his personally identifiable information. Without alleging damages, Plaintiff cannot state a claim for breach of contract. See, *e.g.*, *United Airlines, Inc. v. City of Chicago*, 954 N.E.2d 710, 716 (Ill. App. Ct., 1st Dist., 2011) (damages required for contract claim under Illinois law); *Sterk*, 2012 WL 3006674, at *7 (concluding that "[n]othing in Illinois law indicates that a claim for money damages for one party's mere retention information received from another party is legally viable" and dismissing claim for breach of contract based on retention of personally identifiable information).

**IV. Conclusion**

For the reasons stated above, Defendant's motion to dismiss is granted in part. Specifically, Plaintiff's SHVERA claims are dismissed, except insofar as Plaintiff seeks injunctive relief for unlawful retention of his personally identifiable information. Plaintiff's state-law claims are dismissed. This case is set for status on August 14, 2013, at 9:00 a.m.

Dated: July 19, 2013

Robert M. Dow, Jr.
United States District Judge

15